Dear Senator Corn:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Is a school district that provides on-site educational services to children in Department of Human Services' contracted group homes required to provide substantially the same educational services as children receive in a public school setting?
 2. Is a school district required to pay for the on-site costs of educating children residing in Department of Human Services' contracted group homes, including those associated with the provision of teachers, books and necessary equipment, when the costs of education exceed the funding provided by law?
 3. Where the Department of Human Services' contracted group homes are required by such contract to provide year-round schools and state law only requires public schools to provide ten months, or not less than one hundred eighty days of school each year, who is responsible for the costs of the additional two months of school?
 I. GROUP HOMES
The Department of Human Services ("DHS") is authorized pursuant to the Oklahoma Children's Code to contract with any qualified private person, association, or agency to *Page 2 
Provide community-based care in, among other locations, group homes. 10 O.S. 2001, § 7004-2.1[10-7004-2.1](A). "Group home" is defined in the Oklahoma Children's Code to mean:
 [A] residential facility housing no more than twelve children with a program which emphasizes family-style living in a homelike environment. Such group home may also offer a program within the community to meet the specialized treatment needs of its residents[.]
10 O.S.Supp. 2008, § 7001-1.3[10-7001-1.3](25) (emphasis added). In accordance with the Oklahoma Child Care Facilities Licensing Act (10 O.S. 2001 Supp. 2008, §§ 404.2 — 430) such group homes, as residential childcare facilities, must be licensed by DHS after meeting minimum standards. Id.§ 405(A).[1] These licensing standards established by DHS for residential childcare facilities, such as group homes, are required by law to include full educational opportunities. See id. § 404(B)(5). In accordance with this requirement, DHS established by administrative rule that licensed group homes must ensure that "school-age residents receive the educational instruction to which they are entitled under provisions of federal and state education laws and regulations." OAC340:110-3-154.1(c)(2) (2002). Therefore, in order to answer your question regarding a school district's obligation to provide the educational instruction to which the children residing in DHS-contracted group homes are entitled, we must first review applicable state and federal education laws and regulations.
 A. PUBLIC EDUCATION IN OKLAHOMA
The public schools of Oklahoma consist of all free schools supported by public taxation and include:
 [N]urseries, kindergartens, elementary, which may include either K-6 or K-8, secondary schools and technology center schools, not to exceed two (2) years of junior college work, night schools, adult and other special classes, vocational and technical instruction and such other school classes and instruction as may be supported by public taxation or otherwise authorized by laws which are now in effect or which may hereafter be enacted. *Page 3 
70 O.S. 2001, § 1-106[70-1-106]. With respect to these public schools, the State Department of Education and the State Superintendent of Public Education are responsible for "determining the policies and directing the[ir] administration and supervision." Id. § 1-105(A). The State Board of Education controls the Department of Education and the supervision of the public school system, and has the authority, among other things, to adopt policies and make rules for the public school system and for accreditation of public schools. Id. § 3-104(2), (10). "The State Board of Education shall adopt curricular standards for instruction of students in the public schools of this state that are necessary to ensure there is attainment of desired levels of competencies in a variety of areas." 70 O.S.Supp. 2008, § 11-103.6[70-11-103.6](A).[2]
Pursuant to these statutory provisions, the State Board of Education has established by administrative rules state accreditation standards for Oklahoma schools operated by school districts. See Standards forAccreditation of Oklahoma Schools, Accreditation/Standards Div. of the Okla. State Dep't of Educ. (2008) [hereinafter Standards forAccreditation]; see also OAC 210:35-3-1 — 35-13-117. Organizationally, these standards address educational requirements for all schools generally, as well as those specifically applicable to elementary schools, kindergarten through 8th grade, middle schools, secondary schools, and career and technology centers. See id. The State Board of Education also promulgated by administrative rule additional accreditation standards regarding general school administration and organization covering a wide variety of topics. See OAC 210:10-1-11 — 35-15-2. These standards provide that a quality curriculum shall beaccessible for all students through an organizational structure "which allows each student to progress in accordance with her/his individual growth and development." OAC 210:35-3-66(d) (1998).
While the State Board of Education establishes the standards for and provides supervision of the public school system, individual school districts, the primary purposes of which are to provide free school education, are empowered to maintain and operate a public school system deemed by the local boards as best suited for the needs of the school district. See 70 O.S. 2001 Supp. 2008, §§ 5-117, 1-108. As part of the public school system each school district, either directly or through a cooperative agreement with another district or districts, must providespecial education and related services for all children with disabilitieswho reside in the school district in accordance with the Individuals with Disabilities Education Act ("IDEA"), P.L. No. 105-17 (codified as amended at 20 U.S.C. §§ 1400 — 1419). 70 O.S. 2001, § 13-101[70-13-101].[3]
Requirements for special education and related *Page 4 
services in accordance with IDEA are found in the Oklahoma State Department of Education's Policies and Procedures for Special Educationin Oklahoma [hereinafter Policies and Procedures]. See 70 O.S. 2001, § 13-105[70-13-105].
Each school site providing educational programs to any child must comply with the requirements of this exhaustive collection of the Department of Education's accreditation standards and the policies and procedures for special education incorporating federal regulations where each is applicable. See id.; 70 O.S. 2001, § 3-104.4[70-3-104.4]; OAC210:35-3-201 (2002). *Page 5 
 B. SCHOOL DISTRICTS AND RESIDENCY REQUIREMENTS
Section 1-113 of the Oklahoma School Code obligates a particular school district to provide education services to school-aged children based primarily upon the residence of the child. 70 O.S.Supp. 2008, § 1-113[70-1-113](A). Generally, the residence of a child for school purposes is the school district in which the "parents, guardian, or person having legal custody holds legal residence." Id. § 1-113(A)(1). However, if the child resides in a foster home, for example, the residence of the child for school purposes is the foster home, not the school district where the parent, guardian, or person having legal custody resides. Id. § 1-113(A)(2). We will now address the residency requirements of this section to determine a particular school district's responsibilities to group home residents in response to your first question.
 II. IS A SCHOOL DISTRICT THAT PROVIDES ON-SITE EDUCATIONAL SERVICES TO CHILDREN IN DHS'S CONTRACTED GROUP HOMES REQUIRED TO PROVIDE SUBSTANTIALLY THE SAME EDUCATIONAL SERVICES AS CHILDREN RECEIVE IN A PUBLIC SCHOOL SETTING?
You advised in your request for an Attorney General Opinion that DHS group home providers are contractually obligated to provide classrooms for educational purposes within the group home setting.[4] You further advised that the group home providers, in turn, contract with the school district to provide educational services on-site. See id. While we found that generally all children are required to receive educational services that meet state accreditation standards, and all children with disabilities are required to receive special education and related services that meet the Department of Education's policies and procedures incorporating federal regulations, we must now determine whether there are exceptions to these general requirements based upon the residence of the child in a group home. Upon review of the following provisions of law we conclude that there are no such exceptions for group home residents.
 A. RESIDENCY REQUIREMENTS FOR GROUP HOMES *Page 6 
In this regard, the Oklahoma School Code provides that when a child is placed in a residential facility such as a group home, the school district in which the facility is located shall, upon request of the facility, subject to certain constraints, "provide the educational services to which the children in the entity are entitled." 70 O.S.Supp. 2008, § 1-113[70-1-113](F)(1) (emphasis added). As a matter of procedure, "[p]rior to location in a school district, the individual or agency operating [the group home,] which requires provision of educational services from the school district shall notify the local board of education of its anticipated educational needs." Id. § 1-113(F)(2) (emphasis added). The "educational services" provided by the school district to the group home residents must thereupon "meet or exceed stateaccreditation standards." See id. § 1-113(F)(3) (emphasis added).
 B. EDUCATIONAL SERVICES
We have thus established the "educational services" that are provided by the school district to children residing in residential facilities must meet or exceed state accreditation standards, just as they must for any other school-aged child in a public school setting. 70 O.S. 2001 
Supp. 2008, §§ 1-113(F)(3), 3-104.4. But we have yet to determine whether group home residents are entitled to access the same "educational services" as those required to be provided in the public school generally. In this regard, we find that "educational services" are described in the Oklahoma School Code to include other activities provided under the auspices of a school district, as follows:
 Either in conjunction with public schools or otherwise under the control and supervision of school agencies and officials provided by law for the control and supervision of public schools, other educational services may include health activities, school lunch programs, audiovisual education, safety education, vocational rehabilitation, education of exceptional and handicapped children, playground and physical education activities and such other special services, functions, and activities as may be authorized by law or by regulation of the State Board of Education.
70 O.S. 2001, § 1-107[70-1-107] (emphasis added). In regard to these types of educational services, the Legislature has intended a broad interpretation to include any activities conducted under the control and supervision of a school. A.G. Opin. 08-14, at 91. And, with regard to the special services and education of handicapped children that are included within the definition of "educational services," we find that the Oklahoma School Code requires the provision of such services, either directly or in conjunction with another school district to be in accordance with the Department of Education's minimum requirements. 70 O.S. 2001, §§ 13-101[70-13-101], 13-105. Therefore, in addition to the educational services for group home residents having to meet state accreditation standards, the educational services provided to eligible group home residents must also meet the requirements of the Department of *Page 7 
Education's Policies and Procedures, which implement the federal regulations under IDEA. Thus, we see that the residency statutes do not exempt educational services to group home residents from general school law requirements, nor the residents' access and entitlement thereto.
 C. ON-SITE SPECIAL EDUCATION AND RELATED SERVICES
Initially we note that there is no general legal duty for a school district to provide on-site educational services to group home residents. Whether a school district is legally obligated to provide on-site educational services to any individual group home resident depends upon the applicability of special laws such as the IDEA.
In Oklahoma, any eligible child with disabilities has a right to a public education. 70 O.S. Supp. 2008, § 11-103.6[70-11-103.6](L). According to the Department of Education's Policies and Procedures, full educational opportunities to children with disabilities, aged 3 through 21, are provided by local school districts and state-operated programs in accordance with Oklahoma laws and federal regulations. Id. at 11.
With regard to the federal regulations implementing IDEA, "Special education" services are defined in 34 C.F.R. § 300.39 and "related services" are defined in 34 C.F.R. § 300.34. "Special education" services may include, among other things, instruction in the classroom,in the home, in hospitals or other settings. 34 C.F.R. § 300.39(a)(1)(i) (West, Westlaw through May 8, 2009). "Related services" may include, among other things, transportation, corrective and supportive services,psychological services, physical therapy and recreation.34 C.F.R. § 300.34(a) (West, Westlaw through May 8, 2009). The Department of Education has incorporated these defined services, the provision of which is mandatory for eligible children, in its policies and procedures for special education. Policies and Procedures, at 130 — 137.[5]
Along with the service requirements found in the Department of Education's Policies and Procedures and federal regulations, the Oklahoma School Code has further provided that services for children with disabilities may include the provision of "suitable facilities and . . .qualified teachers and therapists for children with disabilities, eitherin schools, classrooms, or in other places as the board of education ofthe district may deem advisable." 70 O.S.Supp. 2008, § 13-103[70-13-103](A) (emphasis added). "The individualized education program (IEP) team
determines whether related services are necessary and to what extent the services are needed for the child to benefit from special education." *Page 8 Policies and Procedures, at 134 (emphasis added). The local schooldistrict must ensure that all services set forth in the individualizededucation program ("IEP") are provided consistent with the child's needsas identified in the IEP. Id. at 135. Thus, the special education services provided by the school district may include the provision of on-site educational services to eligible children residing in the group home.
From all the foregoing statutory provisions, the federal regulations, the Department of Education's rules, Standards for Accreditation, andPolicies and Procedures we conclude that the opportunities for "educational services" for group home residents, including those required by an IEP to be provided on-site, are the same as those required to be provided to children in the public school setting. In other words, a school district must provide substantially the same educational services to children residing in a group home as children receive in a public school setting, and such services must meet the same standards. See 70 O.S. 2001 Supp. 2008, §§ 1-113(F)(3), 13-101, 13-105(A).
 III. IS A SCHOOL DISTRICT REQUIRED TO PAY FOR THE ON-SITE COSTS OF EDUCATING CHILDREN RESIDING IN DHS'S CONTRACTED GROUP HOMES, INCLUDING THOSE ASSOCIATED WITH THE PROVISION OF TEACHERS, BOOKS, AND NECESSARY EQUIPMENT, WHEN THE COSTS OF EDUCATION EXCEED THE FUNDING PROVIDED BY LAW?
You next ask whether a school district must pay for the costs of educating children residing in DHS's group homes when the on-site costs exceed the funding provided by law.[6] With regard to the costs of educating group home residents, the Oklahoma School Code provides that "[n]o school district shall be responsible for any expenses for students in [a residential facility] which are not directly related to theprovision of educational services." 70 O.S.Supp. 2008, § 1-113[70-1-113](F)(3) (emphasis added) Therefore, in order to answer your question as to who bears the responsibility for any excess costs we must first determine which services provided in the group home setting are directly related to the provision of "educational services," including, as we have seen, those which are special education and related services, and those services which are not. See id.
We note in our analysis that children who are adjudicated deprived and who are placed in DHS custody may present complex treatment issues. "Deprived child" is defined in the Oklahoma Children's Code to mean in pertinent part, a child:
 a. who is for any reason destitute, homeless, or abandoned,
 b. who does not have the proper parental care or guardianship or whose *Page 9 
home is an unfit place for the child by reason of neglect, abuse, cruelty, or depravity on the part of the child's parents, legal guardian, or other person responsible for the child's health or welfare,
 c. who is a child in need of special care and treatment because of the child's physical or mental condition, and the child's parents, legal guardian, or other custodian is unable or willfully fails to provide such special care and treatment. As used in this paragraph, a child in need of special care and treatment includes, but is not limited to, a child who at birth tests positive for alcohol or a controlled dangerous substance and who, pursuant to a drug or alcohol screen of the child and an assessment of the parent, is determined to be at risk for future exposure to such substances,
 d. who is a child with a disability deprived of the nutrition necessary to sustain life or of the medical treatment necessary to remedy or relieve a life-threatening medical condition in order to cause or allow the death of the child if such nutrition or medical treatment is generally provided to similarly situated children without a disability or children with disabilities; provided that no medical treatment shall be necessary if, in the reasonable medical judgment of the attending physician, such treatment would be futile in saving the life of the child,
 e. who is, due to improper parental care and guardianship, absent from school as specified in Section 10-106 of Title 70 of the Oklahoma Statutes, if the child is subject to compulsory school attendance,
 f. whose parent, legal guardian or custodian for good cause desires to be relieved of custody, or
 g. who has been born to a parent whose parental rights to another child have been involuntarily terminated by the court and the conditions which led to the making of the finding, which resulted in the termination of the parental rights of the parent to the other child, have not been corrected.
10 O.S.Supp. 2008, § 7001-1.3[10-7001-1.3](14). In accordance with the Oklahoma Children's Code upon adjudication as a deprived child, DHS must file an individualized treatment and service plan with the court for each such child placed in its custody, and each plan must address the specific services that must be provided to the child by DHS, including, among other things, those related to education, vocational education, and medical, drug or alcohol abuse treatment or counseling. Id. § 7003-5.3(A), (D)(2). Where appropriate, those service *Page 10 
requirements may become the contractual responsibility of service providers such as group homes. 10 O.S. 2001, § 7004-2.1[10-7004-2.1](A).[7] When these types of services are provided in the group home setting, it may be difficult to determine which of the services are directly related to educational services and which are related to other treatment needs, and whether in some instances they may overlap.
It is not within the purview of the Attorney General to decide factually whether a particular service is directly related to the provision of educational services such that a school district is responsible for its costs. See 74 O.S. 2001, § 18[74-18](b)(A)(5). However, if it is not so related, then in accordance with Section 1-113(F)(3) of the Oklahoma School Code, the payment of the excess costs would be a matter to be resolved between the Department of Human Services and its contracted group home providers.
 COST SHARING MEASURES
In our review of applicable law, we find that the Legislature has provided some guidance with respect to the financial obligations of the group home providers and the school districts to the children whom they mutually serve. In this regard, the Legislature has authorized cost sharing measures to be utilized by the school district in providing educational services to residents of group homes. The Oklahoma School Code provides that the "[c]ontracts and agreements for provision of educational services may allow for the use of public and private sources of support which are available to share the costs of educational services and of therapies, treatments, or support services." 70 O.S.Supp. 2008, § 1-113[70-1-113](F)(3) (emphasis added). "The word May usually is employed to imply permissive or discretional, and not mandatory, action or conduct." Shea v. Shea, 537 P.2d 417, 418 (Okla. 1975) (citation omitted). Thus, these discretionary cost-sharing arrangements, where applicable, are subject to negotiation by the group home providers and the school district. 70 O.S.Supp. 2008, § 1-113[70-1-113](F)(3).
With regard to these negotiated cost-sharing agreements between school districts and residential facilities, however, there are certain constraints. The Department of Education accreditation standards specifically provide that "[t]he cost for related services, therapies, treatments, or support services for eligible students shall be the responsibility of the facility *Page 11 
unless otherwise agreed by the contractual parties or as otherwisespecified in the IEP." OAC 210:10-1-13(d)(4) (2007). Properly promulgated rules of a state agency shall have the full force of law and are binding upon persons they affect. See 75 O.S. 2001, § 308.2[75-308.2](C). Accordingly, if specific therapy, treatment, or support service is required by an IEP then the school district must bear the costs associated therewith. If a particular service is not required by an IEP or the school district does not otherwise agree to bear the costs, then the group home provider will be responsible for the costs associated with the services under this Department of Education Rule.
In addition to this constraint on cost-sharing arrangements, the Oklahoma School Code provides that "[o]therwise valid obligations to provide or pay for [educational] services, [and of therapies, treatments, or support services,] such as Medicaid, shall remain in effect for children who are eligible for the services from sources other than the school district." 70 O.S.Supp. 2008, § 1-113[70-1-113](F)(3); OAC210:10-1-13(d)(4) (2007). Further, the Department of Education has provided that the financial responsibility of the state Medicaid agency or other public insurer will precede that of the school district for services provided in the IEP. See Policies and Procedures, at 19;34 C.F.R. § 300.154(b)(1)(i) (West, Westlaw through May 2009). In other words, pursuant to this provision of law and Department of Education policies and procedures, a school district will not be required to assume the costs of educational services that are already covered under existing obligations. However, whether such other obligations exist in any particular instance such that a school district is not responsible for the costs of the services is a question of fact that cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18[74-18](b)(A)(5). *Page 12 
 IV. WHERE DHS'S CONTRACTED GROUP HOMES ARE REQUIRED BY SUCH CONTRACT TO PROVIDE YEAR-ROUND SCHOOLS AND STATE LAW ONLY REQUIRES PUBLIC SCHOOLS TO PROVIDE TEN MONTHS OR NOT LESS THAN ONE HUNDRED EIGHTY DAYS OF SCHOOL EACH YEAR, WHO IS RESPONSIBLE FOR THE COSTS OF THE ADDITIONAL TWO MONTHS OF SCHOOL?
You last ask, where DHS-contracted group homes are required by contract to provide year-round schools and state law only requires public schools to provide ten months, or not less than one hundred eighty days of school each year, who is responsible for the costs related to the provision of the additional two months of school? In this regard, you stated in your request for an Opinion that private group home providers agree with DHS to provide twelve months of school and in turn contract with the school district for the required educational services and agree to pay any costs related to educating those residents for the two additional months which exceed the funding the school district receives from the state.[8]
 A. GENERAL REQUIREMENTS FOR SCHOOL YEAR
We previously noted that a school district, upon request, shall provide the "educational services to which the children [in group homes] are entitled." 70 O.S.Supp. 2008, § 1-113[70-1-113](F)(1). Generally, state law only requires public schools to provide ten months of school or not less than one hundred eighty days of school each year in pertinent part as follows:
 A. A school year for all public schools in Oklahoma shall consist of at least ten (10) months of four (4) weeks each, during which time school shall actually be in session and instruction offered for not less than one hundred eighty (180) days.
Id. § 1-109. Since group home residents are required to receive the education to which they are entitled and since all public school children are entitled to receive at least ten months or one hundred eighty days of instruction, the group home residents are generally entitled to receive at least ten months or one hundred eighty days of instruction.[9] *Page 13 
 B. EXCEPTIONS TO GENERAL REQUIREMENTS FOR SCHOOL YEAR
The Oklahoma School Code provides for exceptions to this general school year requirement. The Oklahoma School Code provides that funds may be expended for school services for an additional period during the summer months for approved programs for qualified children with disabilities, provided their IEPs state the need for the extended school year special education and related services. See 70 O.S. 2001, § 13-101[70-13-101]. The Department of Education's Policies and Procedures defines "extended school year services" to mean "special education and related services which are available to children with disabilities beyond the regular instructional year as a necessary part of a [free appropriate public education] required by the IDEA." Id. at 22; 34 C.F.R. § 300.106(a)(2) (West, Westlaw through May 8, 2009). The Policies and Procedures provide that the school district is responsible for establishing an extended school year policy and providing extended school year special education and related services to children with disabilities as determined necessary by the child's IEP team. Id. at 22. Thus, with respect to children with disabilities, a school year may be more than 180 days, and if so, the school district is responsible for its provision and therefore its costs. If an extended school year for children with disabilities is not required in their IEPs, then under this provision of law the school district is not responsible for its provision or its costs.
In addition to the authority for an extended school year for special education services the Oklahoma School Code authorizes school districts to establish and offer an optional extended school year program in certain circumstances. 70 O.S. 2001, § 1-109.1[70-1-109.1](A). The purpose of the optional extended school year program is to "improve academic achievement of students participating in the extended school year" at the district, at a particular site, or for a particular group of students. Id. If implemented by a school district following a competitive application process, the extended school year costs are borne by the school districts. Id. If a group home is designated by a school district as a site for the optional extended school year or as part of a class or district program, then the school district is responsible for the costs of its provision in the group home setting. Id. If the group home is not so designated, then under this provision of law the school district is not responsible for its provision or its costs. *Page 14 
In conclusion, unless otherwise required by law or pursuant to a school district's decision to provide an extended school year, the cost of instruction beyond one hundred eighty days or ten months must be borne by the group home.
 It is, therefore, the official Opinion of the Attorney General that:
 1. The Department of Human Services ("DHS") is authorized by law to contract with qualified private persons, agencies or associations to provide community-based care in, among other locations, group homes. 10 O.S. 2001, § 7004-2.1[10-7004-2.1].
 2. Group homes, as residential child care facilities, must be licensed by DHS after meeting certain licensing standards, including those which require such group homes to ensure that their residents receive the educational instruction to which they are entitled under provisions of federal and state education laws and regulations. 10 O.S.Supp. 2008, § 405[10-405](A); OAC 340:110-3-154.1(c) (2002).
 3. Where a child is placed in a DHS-contracted group home, the school district wherein the facility is located shall upon request of the facility, subject to certain constraints, provide the educational services to which the children in the group home are entitled. 70 O.S.Supp. 2008, § 1-113[70-1-113](F)(1).
 4. The educational services provided by the school district to group home residents must meet or exceed state accreditation standards. Id. § 1-113(F)(3). A quality curriculum provided by a school district must be accessible to all students. OAC 210:35-3-66(d) (1998).
 5. There is no general legal duty for a school district to provide on-site educational services to group home residents. Whether a school district is legally obligated to provide on-site educational services to any individual group home resident depends upon the applicability of special laws such as the Individuals with Disabilities Education Act ("IDEA").
 6. If the educational services provided by the school district to eligible group home residents include special education services and related services, the services must meet the requirements of the Department of Education's Policies and Procedures for Special Education in Oklahoma, which incorporate federal regulations promulgated under IDEA. 70 O.S. 2001, §§ 13-101[70-13-101], 13-105. Special education services and related services, as defined in federal regulations and adopted in *Page 15 the Department of Education's Policies and Procedures for Special Education in Oklahoma, may include services provided by a school district on-site at a group home for eligible children if indicated in an individualized education program ("IEP"). 34 C.F.R. § 300.39 (West, Westlaw through May 8, 2009).
 7. A school district must provide substantially the same educational services to children residing in group homes as children receive in a public school setting, and such services must meet the same standards and requirements as those provided in a public school setting. 70 O.S. 2001 Supp. 2008, §§ 1-113(F)(3), 13-101, 13-105.
 8. Where services are provided by a school district to group home residents no school district shall be responsible for any expenses for students in a group home that are not directly related to the provision of "educational services." 70 O.S. 2001 Supp. 2008, §§ 1-107, 1-113(F)(3).
 9. It is not within the purview of the Attorney General to decide factually whether a particular service is directly related to the provision of educational services such that a school district is responsible for its costs. 74 O.S. 2001, § 18[ 74-18](b)(A)(5). However, if it is not so related, then the payment of the costs would be a matter to be resolved between DHS and its contracted group home providers. 70 O.S.Supp. 2008, § 1-113[70-1-113](F)(3). 
 10. The Legislature has authorized school districts to enter into contracts for the provision of educational services to group home residents that allow for the "use of public and private sources of support which are available to share the costs of educational services and of therapies, treatment, or support services." 70 O.S.Supp. 2008, § 1-113[70-1-113](F)(3). In addition, "[o]therwise valid obligations to provide or pay for such services, such as Medicaid, shall remain in effect for children who are eligible for the services from sources other than the *Page 16 school district." Id. Whether other such sources are available or otherwise valid obligations exist such that it may be determined who shall bear the costs are questions of fact that cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18[ 74-18](b)(A)(5).
 11. If educational services provided by a school district to eligible children with disabilities who reside in group homes include a specific therapy, treatment, or support service as required by an IEP, then a school district must bear the costs associated therewith. 70 O.S.Supp. 2008, § 1-113[70-1-113](F)(1). If a particular service is not required by an IEP or the school district does not otherwise agree to bear the costs, then the group home provider is responsible for the costs associated with the service. OAC 210:10-1-13(d)(4) (2007).
 12. Generally, state law only requires public schools to provide ten months of school or not less than one hundred eighty days of school each year for group home residents. 70 O.S.Supp. 2008, § 1-113[70-1-113](F)(1). Longer school years must be provided by a school district for children with disabilities if indicated in an IEP. 70 O.S. 2001, § 13-101[70-13-101]. In addition, a school district may provide an optional extended school year in order to improve student academic performance at the district for some classes or at a particular site. 70 O.S. 2001, § 1-109.1[ 70-1-109.1](A). If provided by a school district the school district bears the responsibility for the costs. 74 O.S. 2001, §§ 13-101[74-13-101], 1-109.1(A). *Page 17 
 13. Unless otherwise provided by law or pursuant to a school district's decision to provide an extended school year, the costs of instruction beyond 180 days or ten months must be borne by the group home. See id.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DOROTHY BROWN ASSISTANT ATTORNEY GENERAL
[1] "Child care facility" is defined in the Oklahoma Child Care Facilities Licensing Act to mean "any public or private child careresidential facility, child placing agency, foster family home, grouphome, child care center, part-day child care program, family child care home, or large family child care home providing either full-time or part-time care for children away from their own homes[.]" 10 O.S. 2001, § 402[10-402](2) (emphasis added).
[2] Curriculum units and sets of competencies at the secondary level are set forth in 70 O.S.Supp. 2008, § 11-103.6[70-11-103.6](A).
[3] The State of Oklahoma is obligated to provide a free appropriate education (special education and related services) to children with disabilities if it receives federal financial assistance under Part B of IDEA. See 70 O.S. 2001, § 13-101[70-13-101]; 20 U.S.C. § 1412 (West, Westlaw through May 15, 2009); 34 C.F.R. § 300.2 (West, Westlaw 2007).
[4] Letter from Kenneth Corn, State Senator, Oklahoma State Senate, to Drew Edmondson, Attorney General of Oklahoma (Nov. 6, 2008) (on file with author).
[5] The Department of Education specifically requires that "[a]ll children with disabilities must have available a free appropriate public education (FAPE) that may include related services required for such children to benefit from special education." Id. at 134.
[6] State aid requirements are set forth in Article XVIII and XVIII-B of the Oklahoma School Code, 70 O.S. 2001, §§ 18-101[70-18-101] — 18-125, 18-200.1 — 18-202.1.
[7] Contracted services may include "home-based counseling, therapy and crisis intervention services, nonresidential educational, vocational, social and psychological diagnostic and counseling services, substance abuse treatment, sexual abuse treatment . . . and other related protection, prevention and treatment services." Id.
[8] See n. 4.
[9] In accordance with 70 O.S.Supp. 2008, § 1-109[70-1-109](B), a school district may implement an extended day program, but the annual number of days of instruction must equal or exceed 180 days. *Page 1